UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Ritrama, Inc.,** | Civil No. 11-CV-977 (SRN/AJB) |
| **Plaintiff,** | |
| v. | MEMORANDUM OPINION AND ORDER |
| **Burlington Graphic Systems, Inc.,** | |
| **Defendant**. | |

Anthony N. Kirwin, Eric J. Nystrom, John C. Ekman, Lindquist & Vennum, PLLP, 80 South Eighth Street, Suite 4200, Minneapolis, Minnesota 55402, for Plaintiff

Alain M. Baudry & Martin S. Fallon, Maslon, Edelman, Borman & Grand, LLP, 90 South Seventh Street, Suite 3300, Minneapolis, Minnesota 55402; Brittany L. Lopez & David G. Peterson, Reinhart, Boerner, Van Deuren, SC, 1000 N. Water Street, Suite 1700, Milwaukee, Wisconsin 53202, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on a Motion to Dismiss, or in the Alternative, to Transfer Venue to the Eastern District of Wisconsin filed by Defendant Burlington Graphic Systems, Inc., ("Burlington") [Doc. No. 8]. For the reasons that follow, the Motion is denied in part, as to dismissal for lack of personal jurisdiction, and granted in part as to the transfer of venue.

I.  BACKGROUND

Defendant Burlington, a Wisconsin corporation with its principal place of business in Racine, Wisconsin, is a manufacturer of pressure sensitive decals used as graphics and stripes in motor homes and recreational vehicles ("RVs"). In order to manufacture its decals, Burlington purchases vinyl with adhesive attached to it. Beginning in late December 2005, Burlington

1

purchased more than $4.8 million in vinyl from Plaintiff Ritrama, Inc. ("Ritrama") for use in producing decals for Burlington's largest customer, Keystone RV. (Decl. of Mark Edwards in Supp. Def.'s Mot. ¶¶ 2-4 [Doc. No. 11].) Ritrama is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. (MN Compl. ¶ 1 [Doc. No. 1].) Ritrama is a subsidiary of an Italian company, Ritrama S.p.A., and has facilities throughout the world, including two locations in the United States – Cleveland and Minneapolis. (Decl. of David Peterson in Supp. Def.'s Mot. ¶ 2 [Doc. No. 13].) In late 2007, Burlington began receiving complaints from Keystone about the failure of its decals. The decals in question had been manufactured by Ritrama and were purportedly peeling, bubbling and otherwise failing prematurely. (WI Compl. ¶ 14, Ex. 2 to Decl. of David Peterson [Doc. No. 13-2].) Keystone expected Burlington to correct all product failures in light of a one-year product warranty between Keystone and Burlington. Burlington contends that it paid Keystone's claims and provided replacement products to Keystone. (Id. ¶¶ 32-33.)

Burlington and Ritrama investigated the cause of the product failure. Burlington contends that the product failure was due to problems with Ritrama's adhesive adhering to the vinyl. (Id. ¶ 15.) Ritrama, however, argues that any failures or defects were caused by Burlington's improper processing and application of the product. (MN Compl. ¶ 26 [Doc. No. 1].) Burlington contends that the defective product was all produced in Ritrama's Ohio facility. (Decl. of Jeff Knutson in Supp. Def's Mot. ¶ 8 [Doc. No. 12].) After testing different Ritrama adhesives, Burlington switched to a different Ritrama adhesive in July 2008. (WI Compl. ¶ 20 [Doc. No. 13-2].)

Burlington contends that in January 2009, it received Ritrama's assurance that Ritrama

2

would take care of the Keystone claims. (Edwards Decl. ¶ 11 [Doc. No. 11].) Burlington continued to pay Ritrama for the new product and kept Ritrama apprised of Keystone's claims. (Id.) To that end, Burlington contends that it provided "voluminous" documentation of the warranty claims to Ritrama's insurer. (Id. ¶ 13.) While Ritrama's insurer continued its investigation, Burlington contends that it experienced a severe "cash crunch," caused by it paying out claims to Keystone without receiving reimbursement from Ritrama or its insurer. (Id. ¶ 14.) Burlington contends that Ritrama granted Burlington an open product credit, which Burlington understood to be a step toward resolution of the problem with the adhesive. Pursuant to this credit, Ritrama provided its products to Burlington without requiring Burlington's payment for several months. (Id.) Burlington contends that in July 2010, Ritrama informed Burlington that it had reached the limit of the open credit and offered to resolve Burlington's claims by providing a $175,000 payment. (Knutson Decl. ¶ 9 [Doc. No. 12]; Edwards Decl. ¶ 15 [Doc. No. 11].) Burlington rejected the offer and the parties attempted to negotiate a resolution. (Edwards Decl. ¶ 15 [Doc. No. 11].) In January 2011, Burlington's counsel sent a demand letter to Ritrama's president, in which he stated that Burlington would commence litigation if the parties were unable to reach a satisfactory resolution. (Letter of 1/6/11 from D. Peterson to D. Hanzal, Ex. B [Doc. No. 17-2] to Hanzal Decl. [Doc. No. 17].) At an April 12, 2011 meeting at which the parties discussed Burlington's settlement demand, Burlington contends that it reiterated its intention to bring a lawsuit should the parties' settlement efforts fail. (Peterson Decl. ¶ 3 [Doc. No. 13].) At the conclusion of the meeting, Ritrama asked Burlington to produce certain additional documents. Ritrama further indicated that because its attorney would be unavailable for two weeks and also because it wanted to correspond with its insurer, it would

3

need at least 30 days in which to respond to Burlington's settlement demand. (Id.)

On April 19, 2011, Ritrama commenced this action in Minnesota (the "Minnesota suit") against Burlington, essentially alleging breach of contract claims. (MN Compl. ¶¶ 27-32 [Doc. No. 1].) Ritrama contends that Burlington failed to pay it $149,575 for the sale of pressure sensitive films and vinyl products. Ritrama also seeks a declaratory judgment that it has no liability for any failures or defects of the vinyl adhesive products that Burlington purchased from Ritrama. (Id. ¶¶ 42-49.)

Later that same day, Burlington filed suit against Ritrama in the United States District Court for the Eastern District of Wisconsin, Burlington Graphics Systems, Inc. v. Ritrama, Inc. (E.D. Wisc. 11-CV-387) (the "Wisconsin suit"), alleging claims for breach of express and implied warranty, breach of contract, estoppel and waiver. (WI Compl. ¶¶ 52-71, Ex. 2 to Peterson Decl. [Doc. No. 13-2].) In the Wisconsin suit, Burlington seeks over $6 million in damages from Ritrama arising from the allegedly defective product that Burlington purchased from Ritrama. Pursuant to the parties' stipulation, the Wisconsin court has stayed further proceedings in that case until this Court issues a decision on Burlington's instant motion to dismiss or, in the alternative, to transfer venue to the Eastern District of Wisconsin. (Burlington Graphics Systems, Inc. v. Ritrama, Inc. (E.D. Wisc. 11-CV-387) Stipulation to Stay and Order of 6/8/11, Exs. 4 & 5 to Peterson Decl. [Doc. Nos. 13-4 & 13-5].)

Burlington contends it has insufficient contacts with the state of Minnesota to warrant the exercise of this Court's personal jurisdiction over it. Although the Minnesota Complaint contains no explicit allegations regarding Burlington's contacts with the state, Ritrama contends that the claims in this action arose out of 41 individual purchase orders that Burlington sent to

4

Ritrama in Minnesota, of which 20 were for products that Ritrama manufactured and shipped from Minnesota. (Ritrama Spreadsheet, Ex. C to Decl. of Michelle Marsolais [Doc. No. 23].) In addition, Ritrama argues that the products that form the basis of Ritrama's declaratory judgment claim were solicited through Ritrama's Minnesota employee and made through Ritrama's Minneapolis headquarters. (Decl. of Daryl Hanzal in Supp. Pl.'s Opp'n Mem. ¶ 5 [Doc. No. 17].)

## II. DISCUSSION

### A. Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, Inc. v. ProTeq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996). The Court views the evidence in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Id.

The general test for deciding whether a federal court may exercise personal jurisdiction over a civil defendant is well settled. First, the court must determine whether the forum state's long-arm statute subjects the defendant to jurisdiction. Second, the exercise of jurisdiction must comport with the due process requirements of the Fifth Amendment. Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. See Minn. Stat. § 543.19; Dotmar, Inc. v. Niagra Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995) (describing reach of Minnesota's long-arm statute).

In order to satisfy the due process clause, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "contacts" with the forum state generally must not arise due to mere fortuity, but must arise because the defendant has "purposefully availed" itself of the privilege of conducting activities in the state. Hanson v. Denckla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, 89 F.3d at 522.

"[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." J. McIntyre Mach., Ltd. v. Nicastro, — U.S. —, 131 S. Ct. 2780, 2787 (2011) (plurality opinion). However, when a defendant "purposefully avails itself of the privilege of conducting activities within" a state, Hanson, 357 U.S. at 253, a state's exercise of jurisdiction over that defendant is proper "'in a suit arising out of or related to the defendant's contacts with the forum.'" J. McIntyre, 131 S. Ct. at 2788 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). "The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." Id. at 2789.

"The minimum contacts necessary for due process may be the basis for either 'general' or 'specific' jurisdiction." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010). General jurisdiction, which "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996), requires an examination of whether the defendant's contacts with the forum are "continuous and systematic." See Helicopteros, 466 U.S. at 414-15 & n.9 (introducing distinction between "general" and "specific" jurisdiction and

6

concluding that Columbian corporation's contacts with Texas did not rise to level required for "general jurisdiction"). Specific jurisdiction may be conferred over causes of action arising from or related to a defendant's actions within the forum state. Burlington, 97 F.3d at 1103; Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (concluding that cause of action in that case was "entirely unrelated to [defendant's] activities in [the forum]").

Burlington raises several challenges to this Court's jurisdiction, arguing that all of the Ritrama vinyl that it used in the RV market was purchased from Ritrama's Ohio location, from which it was shipped to Wisconsin, where it was processed by Burlington, and was then shipped to Keystone in Indiana. (Knutson Decl. ¶ 2 [Doc. No. 12].) Burlington has no employees, facilities, property or bank accounts in Minnesota, and contends that none of its employees have ever traveled to Minnesota to meet with Ritrama employees. (Edwards Decl. ¶ 5 [Doc. No. 11].) Conceding that it has some contacts with Minnesota, however, Burlington characterizes the following contacts as too limited to warrant the imposition of personal jurisdiction: 1) one customer (not Ritrama) located in Minnesota and one other customer with a warehouse in Minnesota; 2) Minnesota shipments in 2011 of less than .16% of Burlington's total product sales; 3) Minnesota shipments over the last four years of less than .36% of Burlington's total product sales; 4) only one Burlington sales person to have ever visited Minnesota and on only one occasion; and 5) none of the defective vinyl was sold by Burlington to any customers in Minnesota. (Knutson Decl. ¶¶ 4-7 [Doc. No. 12].)

Ritrama, however, contends that its relationship with Burlington has always been based in Minneapolis, the location of its principal place of business. During a 13-year period from 1997 to 2010, Burlington bought over $8 million worth of products from Ritrama, some of which

7

were manufactured in Ritrama's Minneapolis facility as well as its Cleveland facility. (Marsolais Decl. ¶ 3 [Doc. No. 19], Ex. B to Marsolais Decl. [Doc. No. 20].) Moreover, Ritrama contends that Burlington addressed all purchase orders to Ritrama's Minneapolis headquarters and directed payment to Minneapolis. (Marsolais Decl. ¶ 4 [Doc. No. 19].) Specifically, Ritrama contends that the vinyl and adhesive products that form the basis of its declaratory judgment claim were sold through Ritrama's Minnesota employee, working primarily from Chicago. (Hanzal Decl. ¶¶ 5-6 [Doc. No. 17].)

Construing the facts in the light most favorable to Plaintiff, the Court finds that Burlington has purposefully availed itself of the privilege of conducting activities within the state of Minnesota, and that the nature, quality, and quantity of Defendant's contacts with Minnesota favor the exercise of personal jurisdiction over Burlington. In St. Jude Medical, Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591-92 (8th Cir. 2001), the Eighth Circuit found that personal jurisdiction in Minnesota was proper where the defendant pursued a business relationship with the Minnesota plaintiff, involving phone calls, written contacts, the contemplation of an ongoing relationship, and products manufactured and payment received in Minnesota. See also Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir.1995) (personal jurisdiction established where defendant had systematic business relationship with Minnesota resident and numerous mail and telephone contacts); Bulk Process Equip. v. Earth Harvest Mills, Inc., 10-CV-4176 (DWF/JSM), 2011 WL 1877836, at *5 (D. Minn. May 17, 2011) (finding exercise of personal jurisdiction proper where defendant solicited Minnesota plaintiff to design certain equipment, ordered equipment from Minnesota plaintiff and communicated by phone and email with Minnesota plaintiff).

Consistent with the authority of St. Jude and Wessels, Burlington has sufficient non-fortuitous, ongoing purposeful contacts with Minnesota to support the exercise of personal jurisdiction. Billing invoices were sent from Minnesota and returned to Minnesota. Burlington addressed its purchase orders to Ritrama's Minneapolis headquarters. In fact, Burlington sent more than 590 individual purchase orders addressed to Ritrama in Minneapolis for the purchase of vinyl adhesive products between 2005 and 2010. (Marsolais Decl. ¶¶ 3 [Doc. No. 19], Exs. B-D [Doc. Nos. 20-31].) Some of these orders involve the allegedly defective product that is the subject of Plaintiff's declaratory judgment claim. Thus, although the Court need not reach the issue, specific jurisdiction is satisfied, as Burlington had contacts with Minnesota that form the basis of Ritrama's declaratory judgment claim. In any event, Burlington had sufficient systematic contacts with Minnesota to satisfy general jurisdiction. For all of these reasons, Defendant's motion to dismiss is denied.

### B.     Transfer of Venue

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When deciding a motion to transfer pursuant to § 1404(a), the Court must consider the convenience of the parties, the convenience of the witnesses, and the interest of justice. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997), cert. denied, 522 U.S. 1029 (1997). In considering these factors, the Court must make a "case by case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id. The burden is on the party seeking the transfer "to show that the balance of factors 'strongly' favors the movant." Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D.

Minn. 1999) (quotation omitted).

As a threshold matter, the parties dispute the applicability of the "first-filed rule," which provides that "when parallel litigation has been instituted in separate courts," priority is given to "the party who first establishes jurisdiction." Keymer v. Mgmt. Recruiters, Int'l Inc., 169 F.3d 501, 503 n. 2 (8th Cir. 1999). Pursuant to this rule, a district court may dismiss a later-filed action or transfer it if an action involving the same parties and issues was filed earlier in a different district. See Slidell, Inc. v. Archer Daniels Midland Co., 02-CV-4841 (MJD/JGL), 2003 WL 22050776, at *4 (D. Minn. Sept. 2, 2003) (citing Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir.1999) and Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir.1985)). The rule, however, is not to be rigidly applied, but rather "is to be applied in a manner best serving the interests of justice," and the "prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc., 259 F.R.D. 398, 408-09 (D. Minn. 2009) (quoting Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1005-07 (8th Cir. 1993)). This Court has previously identified two "red flags" that might mark such "compelling circumstances" in cases where: (1) the first suit was filed after the other party gave notice of its intention to sue and (2) the first suit was primarily for declaratory relief.[1] Id. (citing Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Ret. Sys., 57 F.3d 638, 641 (8th Cir . 1995)).

Given the circumstances of this case, the Court declines to apply the first-filed rule.

---

[1] Courts also decline to apply the first-filed rule in cases involving forum shopping or bad faith. See Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991); Equal Employment Opportunity Comm'n v. Univ. of Penn., 850 F.2d 969 (3d Cir. 1988); William Gluckin & Co. v. Int'l Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969).

Burlington has shown that Ritrama had notice of its intention to file suit as early as January 6, 2011, when Burlington's counsel sent a demand letter to Daryl Hanzal, Ritrama's President. (Letter of 1/6/11 from D. Peterson to D. Hanzal, Ex. B [Doc. No. 17-2] to Hanzal Decl. [Doc. No. 17].) Burlington's counsel stated, "[I]n the event we are unable to reach a satisfactory resolution, we will be commencing litigation against Ritrama for the full amount of Burlington's damages." (<u>Id.</u> at 6.) In addition to the demand letter, Ritrama had further notice of Burlington's intention to file suit as of the April 12, 2011 meeting at which Ritrama requested an additional thirty days in which to consider Burlington's settlement demand. (Knutson Decl. ¶¶ 11-12 [Doc. No. 12]; Peterson Decl. ¶ 3 [Doc. No. 13].) Ritrama then filed the Minnesota suit seven days after the April 12 meeting, prompting Burlington to immediately file their lawsuit in Wisconsin. (<u>Id.</u>) At the hearing on the instant motion, counsel for Ritrama portrayed the April 12 meeting as a meeting at which Ritrama representatives simply intended to 'hear out Burlington's evidence with no imminent threat of litigation.' However, Ritrama has proffered no evidence to that effect. In contrast, in addition to the January demand letter, Burlington has submitted two sworn declarations in support of its position that Ritrama was aware of Burlington's settlement demand and its intention to commence litigation if the settlement process proved unsuccessful. Although the first suit, i.e., the Minnesota suit, does not exclusively seek declaratory relief, its declaratory judgment claim is by far the more significant claim, in terms of dollars. Burlington seeks over $6 million from Ritrama. Consequently, on these facts, the Court finds that application of the first-filed rule would not 'best serve the interests of justice,' <u>CBS Interactive</u>, 259 F.R.D. at 408-09, and it is not applied here.

       Turning to the factors that courts consider when determining § 1404(a) motions, the

Court first concludes that this action "might have been brought" in the Eastern District of Wisconsin. 28 U.S.C. § 1404(a). An action may be brought in any district where a "substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(a)(2), or where "any defendant is subject to personal jurisdiction," 28 U.S.C. § 1391(a)(3). For the same reasons that this Court has found personal jurisdiction satisfied in Minnesota with respect to Burlington's contacts, Ritrama's contacts with Wisconsin, based on the same business relationship, are likewise sufficient. There appears to be no dispute that Ritrama continuously and systematically sold significant quantities of products to Burlington in Wisconsin. In addition, Burlington represents that Ritrama's personnel have visited Burlington's facilities in Wisconsin on numerous occasions. (Edwards Decl. ¶ 22 [Doc. No. 11].)

### 1. Convenience of Parties and Witnesses

As to the convenience of the parties and witnesses, "The logical starting point for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district." Birmingham Fire Ins. Co. of Pa. v. Up North Plastics Inc., 04-CV-21 (RHK/AJB), 2004 WL 838169, at *2 (D. Minn. Apr. 19, 2004) (citing 17 Moore's Federal Practice § 111.13[1][e][i])). Deference is typically given to the plaintiff's choice of forum, particularly if the plaintiff resides in the district in which the case is venued.[2] Graff, 33 F. Supp.2d at 1121. Here, however, Minnesota and Wisconsin are equally convenient to the parties, as Ritrama is a corporation with its principal place of business in

---

[2] Courts have also addressed this factor – the plaintiff's choice of forum – when considering the "interests of justice" factor. See Terra Int'l, 119 F.3d at 696; see also, Lycos v. Tivo, Inc., 499 F. Supp.2d 685, 692 (E.D. Va. 2007) ("In balancing the convenience and justice factors, courts generally give 'substantial weight' to the plaintiff's choice of forum.") (citation omitted).

Minnesota and Burlington is a corporation with its principal place of business in Wisconsin.

Considerations relevant to the convenience of witnesses include the number of essential nonparty witnesses, their location, and the preference for live testimony. Graff, 33 F. Supp.2d at 1121. The inconvenience to non-party witnesses is of particular concern, because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." Advanced Logistics Consulting, Inc. v. C. Enyeart LLC, 09-CV-720 (RHK/JJG), 2009 WL 1684428, at *5 (D. Minn. June 16, 2009) (citing FUL Inc. v. Unified Sch. Dist. No. 204, 839 F.Supp. 1307, 1311 (N.D. Ill.1993)). The Court must focus on the importance and materiality of the anticipated testimony and determine whether the forum is convenient for the witnesses. Graff, 33 F.Supp.2d at 1122. As to Burlington's claims regarding the manufacture of the allegedly defective product (the alleged non-payment of which forms the basis for Ritrama's declaratory judgment claim in the Minnesota suit), Burlington represents that many key witnesses reside in Ohio, where Ritrama manufactured the product in question. (Edwards Decl. ¶ 18 [Doc. No. 11].) All of its employee witnesses, Burlington contends, reside in Wisconsin, while third-party Keystone's witnesses reside in Indiana. (Id. ¶¶ 20-21.) In addition, Burlington identifies non-party Kansas witnesses involved in the testing of the allegedly defective product. (Id. ¶ 21.) Although Ritrama does not expressly state that all of its witnesses are in Minnesota, presumably a majority of them are, although Tom Wenzel, who had contact with Burlington apparently resides in Illinois. Given that Ritrama's witnesses are likely in Minnesota, Burlington's are in Wisconsin, and non-party witnesses who are not subject to either forum's subpoena power are in Indiana and Kansas, this factor is neutral.

Where the convenience of the parties is inconclusive, "the tie, or the near tie, goes to the

Plaintiff's choice of forum." Novartis Seeds Inc. v. Pioneer Hi-Bred Int'l, Inc., 97-CV-170 (JRT/RLE) 1997 WL 852110 (D. Minn. June 26, 1997). "[T]ransfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996) (citation omitted). To the extent that the convenience of the parties is neutral or a "tie," the plaintiff's choice of forum is to be given deference. However, where the events giving rise to the litigation did not occur in the forum, the plaintiff's choice of forum is accorded "significantly less" deference. CBS Interactive, 259 F.R.D. at 408. Here, the events giving rise to the litigation cannot be said to have "occurred" strictly in Minnesota. In fact, only limited events occurred in Minnesota, as compared to Wisconsin. The products giving rise to Burlington's claims in Wisconsin and Ritrama's declaratory judgment claim in Minnesota were manufactured in Ohio and delivered to Wisconsin. To the extent that payment was made, or credit was issued, that transfer took place between Minnesota and Wisconsin. Moreover, for the reasons stated above regarding the first-filed rule, the Court finds that "breaking a tie" as to an inconclusive convenience-of-the-parties factor in Plaintiff's favor is not warranted here. Given these facts, Ritrama's choice of forum does not tilt the scales in its favor as to the convenience of the parties.

### 2. Interests of Justice

The Court must also evaluate which venue will best promote the interest of justice. Graff, 33 F. Supp. 2d at 1122. This factor is weighed "very heavily," id., and may be the decisive factor in a particular case, "even if the convenience of the parties and witnesses might call for a different result." Product Fabricators, Inc. v. CIT Commc'ns Fin. Corp., 06-CV-537, 2006 WL 2085413, at *3 (D. Minn. June 25, 2006) (citing Coffey v. Van Dorn Iron Works, 796

14

F.2d 217, 220-21 (7th Cir.1986)). The relevant considerations include judicial economy, the plaintiff's choice of forum, the costs of litigating in each forum, obstacles to a fair trial, choice-of-law issues, the advantages of having a local court determine questions of local law, see Terra Int'l, 119 F.3d at 696, and each party's ability to enforce a judgment, Swedberg. v. Marotzke, 00-CV-2421 (DWF/RLE), 2004 WL 831136, at *6 (D. Minn. Apr. 15, 2004) (citing Graff, 33 F. Supp.2d at 1122.)

Judicial economy weighs in favor of transferring this case to the Eastern District of Wisconsin, due to the risk of inconsistent decisions if the two proceedings go forward in both venues, and the need for conservation of judicial resources. The parties are identical and the two cases arise out of the same set of facts. The cases should not be tried in two separate forums. Ritrama's claims in this litigation are essentially its defenses in the Wisconsin action, as the predicatory acts giving rise to Ritrama's claims in Minnesota are set forth in Burlington's Complaint in Wisconsin.

In addition to considerations of judicial economy and efficiency, an additional fairness consideration is the extent to which the laws of the two jurisdictions may conflict. Here, however, this factor does not appear to be significant, because the application of relevant contracts and warranties law is similar and straightforward. Both this District and the Eastern District of Wisconsin are equally capable of applying the applicable law.

The remaining considerations with respect to the interest of justice are also not implicated. There is no argument that either forum presents obstacles to a fair trial, or, given the straightforward law, that a "local" court needs to determine "local" law. Also, for the reasons stated herein, the Court does not accord weight to Plaintiff's selection of Minnesota as the

forum. Accordingly, the Court concludes that the interest of justice strongly favors the transfer of this action to the Eastern District of Wisconsin.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss, or in the Alternative, to Transfer Venue to the Eastern District of Wisconsin [Doc. No. 8] is **DENIED IN PART**, as to dismissal, and **GRANTED IN PART**, as to transfer of venue;

2. This action is transferred to the United States District Court for the Eastern District of Wisconsin; and

3. The Clerk of Court is directed to effect the transfer.

Dated: November 7, 2011

                                                        s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge